IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PROXIBID, INC., a Nebraska corporation,<br><br>     Plaintiff,<br><br>  v.<br><br>BIGGAVEL.COM, INC., an Idaho corporation, ALAN ARMSTRONG, DOROTHY ARMSTRONG, ALAN ARMSTRONG, JR., CALPOP.COM, a California corporation<br><br>     Defendants. | 8:07CV396<br><br>MEMORANDUM AND ORDER |

  This matter is before the court on a motion to dismiss for lack of personal jurisdiction and improper venue, or alternatively, to transfer venue, filed by defendants BigGavel.com, Inc., Alan Armstrong, Dorothy Armstrong, and Alan Armstrong, Jr., also known as A.J. Armstrong (hereinafter, collectively, "the Armstrong defendants"), Filing No. 16. This is a civil action for damages and injunctive relief for alleged copyright infringement under 17 U.S.C. § 101 *et seq.* ("the Lanham Act"), misappropriation of trade secrets and deceptive trade practices under the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301 to 87-306, breach of contract, and common-law unfair competition.[1] The Armstrong defendants assert that this court lacks personal jurisdiction because they do not have the requisite minimum contacts with Nebraska. They further allege that venue in Nebraska is improper and alternatively move to transfer the action to the United States

---

[1] Specifically, Proxibid alleges that defendant BigGavel.com infringed its copyrights by copying Proxibid's website and alleges that BigGavel's acts constitute unfair competition in violation of federal law and the Nebraska Uniform Fair Trade Practices Act. Filing No. 15, Amended Complaint. Proxibid also asserts a common law unfair competition claim against all defendants, a breach of contract claim against defendants Dorothy and Alan Armstrong, a misappropriation of trade secrets claim against BigGavel.com and Dorothy and A.J. Armstrong, as well as a contributory copyright infringement claim against defendant CalPop. *Id.*

District Court for the District of Idaho.  Jurisdiction is premised on both a federal question under 28 U.S.C. §§ 1331, 1338, and 1367, and diversity of citizenship under 28 U.S.C. § 1332.

**I.   BACKGROUND**

The evidence presented to the court in support of and in opposition to the motion establishes that Proxibid is headquartered in Omaha, Nebraska.  Filing Nos. 24 & 25, Plaintiff's Indices of Evidence ("Evid."), Ex. B, Affidavit of Ken Maxwell ("Maxwell Aff.") at 1. Ken Maxwell is one its founding partners.  *Id.*  Tom Clark is the Chief Operating Officer of Proxibid.  *Id.*, Ex. C, Affidavit of Tom Clark, ("Clark Aff.") at 1.  Proxibid created an Internet auction platform that allows auction companies to broadcast their sales over the Internet in real time.  *Id.,* Ex. B, Maxwell Aff. at 1.  Proxibid's website, www.proxibid.com, has been active since 2001.  *Id.* at 2.  Each page of the website states "© 2001-2007 Proxibid, Inc.  All rights reserved," and sets out terms and conditions of use.  *Id.*  Proxibid has clients throughout the world who are typically licensed auctioneers.  *Id.*  Proxibid's live webcasting service is facilitated by auctioneers and independent contractors, known as ProxiAgents, who have been trained to use Proxibid's web-based service.  *Id.*

ProxiAgents act as conduits for bidders who participate online.  *Id.* at 2-3. ProxiAgents are provided passwords that access the Proxibid website in order to perform duties as ProxiAgents.  *Id.* at 7.  Proxibid enters into Independent Contractor Services Agreements with ProxiAgents.  *Id.,* Ex. C, Clark Aff. at 2-3.  The typical duties of a ProxiAgent are to photograph inventory, to set up an Internet connection, to run the software applications, to train the auction company to use the software, to assist in catalog creation, and to act as a remote ringman, that is, an agent for an Internet buyer who bids

on his or her behalf. *Id.* at 2. ProxiAgents have access to Proxibid's proprietary and trade secret information. *Id.* at 2-3.

The Armstrongs are residents of Idaho. Filing No. 18, Defendants' Index of Evid., Ex. 2, Declaration of Alan Armstrong ("Alan Armstrong Decl."); Ex. 3, Declaration of Dorothy Armstrong ("Dorothy Armstrong Decl."); Ex. 4, Declaration of Alan Armstrong, Jr. ("A.J. Armstrong Decl."). Defendant Alan Armstrong has never been to Nebraska. *Id.*, Ex. 2, Alan Armstrong Decl. at 1. Alan Armstrong is the owner and operator of Armstrong Auctions in Nampa, Idaho. *Id.* He is also the founder and sole shareholder of Big Gavel.com, an Idaho corporation that was incorporated in 2006. *Id.* As a client, Armstrong used the services of Proxibid to webcast its auctions. *Id.*, Ex. 3, Dorothy Armstrong Decl. at 2; Filing No. 24, Plaintiff's Index of Evid., Ex. C, Clark Aff. at 10. Armstrong Auctions conducted eight auctions through Proxibid's website and paid Proxibid for the service. *Id.*

Dorothy Armstrong has been involved in the auction business with her husband, Alan Armstrong, since 1992. Filing No. 18, Ex. 3, Dorothy Armstrong Decl. at 1. She has never been to Nebraska. *Id.* She entered into an Independent Contractor Services Agreement with Proxibid and worked as a ProxiAgent for Proxibid from the fall of 2004 until May 2005. *Id.* at 2. The agreement provides that it will be construed in accordance with Nebraska law. Filing No. 24, Plaintiff's Index of Evid., Ex. C, Clark Aff., attached Ex. 1, Independent Contractor Services Agreement. As a ProxiAgent, Dorothy Armstrong worked at onsite auctions in many states, but not in Nebraska. Filing No. 18, Ex. 3, Dorothy Armstrong Decl. at 2. Dorothy Armstrong participated in several training sessions via teleconference and via online participation with Proxibid personnel in Omaha, Nebraska. Filing No. 24, Plaintiff's Index of Evid., Ex. C, Clark Aff. at 3. From September 2004 to

December 2005, Dorothy Armstrong acted as a ProxiAgent for over 33 auctions. *Id.* at 4. She was compensated by Proxibid for her participation in the auctions and was reimbursed for her expenses. *Id.* at 4-6. While working for Proxibid, she was also employed by Armstrong Auctions. *Id.,* Dorothy Armstrong Decl. at 2.

Similarly, A.J. Armstrong, the son of Dorothy and Alan Armstrong, entered into an Independent Contractor Services Agreement with Proxibid and served as a ProxiAgent from late 2004 to early 2006. Filing No. 24, Plaintiff's Index of Evid., Ex. C, Clark Aff. at 6. He, too, was trained via teleconference and online participation with Proxibid personnel in Omaha, but also traveled to Omaha for work and training. *Id.* at 6; Filing No. 18, Defendant's Index of Evid., Ex. 4, A.J. Armstrong Decl. at 2. A.J. Armstrong acted as a ProxiAgent for over 88 auctions. Filing No. 24, Ex. C, Clark Aff. at 7. He was compensated for his services and reimbursed for his expenses. *Id.* at 7-10. A.J. Armstrong and Dorothy Armstrong accessed Proxibid's website using their ProxiAgent passwords on 551 occasions. *Id.*, Ex. B, Maxwell Aff. at 7.

## II.   DISCUSSION

### A.   Law

The plaintiff bears the burden to establish the court's *in personam* jurisdiction. *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 646-47 (8th Cir. 2003). However, "'[t]o defeat a motion to dismiss for lack of personal jurisdiction, the [plaintiff] need only make a prima facie showing of jurisdiction'" and may do so by affidavits, exhibits, or other evidence. *Romak USA, Inc. v. Rich,* 384 F.3d 979, 983 (8th Cir. 2004) (*quoting Epps,* 327 F.3d at 646-47 (8th Cir. 2003)). The court views the evidence in the light most favorable to the

plaintiff, as the nonmoving party, and resolves factual conflicts in its favor. *Epps,* 327 F.3d at 647.

Jurisdiction over a nonresident defendant must satisfy the requirements of the forum state's long-arm statute and of due process. *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001). Nebraska's long-arm statute allows a court to exercise jurisdiction over a person transacting any business in the state, contracting to supply services or things in the state, or causing tortious injury by an act or omission in the state. *See* Neb. Rev. Stat. § 25-536 (a)-(c). Because Nebraska's long-arm statute has been construed to permit jurisdiction to the extent of constitutional limits, the key question is whether the exercise of personal jurisdiction comports with due process. *Oriental Trading*, 236 F.3d at 943; *Pecoraro v. Sky Ranch for Boys, Inc.,* 340 F.3d 558, 561 (8th Cir. 2003). Due process requires that a defendant have sufficient "minimum contacts" with the forum state such that summoning the defendant would not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The nonresident defendant's conduct and connection to the forum state must be such that "he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980); *Pecoraro*, 340 F.3d at 562. (stating that "[t]he central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there"). "Purposeful availment" means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party. *Burger King Corp.,* 471 U.S. at 475 (noting that "'there must be some act

by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'") (*quoting Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). Moreover, this purposeful availment must be sufficient to provide the defendant with fair warning that his activities might result in his being haled into court in that jurisdiction. *Johnson v. Woodcock,* 444 F.3d 953, 955 (8th Cir. 2006). Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit. *Clune v. Alimak AB*, 233 F.3d 538, 544 n.8 (8th Cir. 2000).

The Supreme Court recognizes two theories for evaluation of personal jurisdiction: general and specific jurisdiction. *Helicopteros Nacionales de Colombia,* S.A. v. Hall, 466 U.S. 408, 414-15(1984); *Steinbuch v. Cutler,* 518 F.3d 580, 586 (8th Cir. 2008). A state may exercise general jurisdiction if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state. *Steinbuch,* 518 F.3d at 586. Specific jurisdiction, on the other hand, is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities. *Id.* With those principles in mind, courts consider five factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. *Pecoraro,* 340 F.3d at 562 (noting that the first three

factors are closely related and are of primary importance, while the last two factors are secondary).

When a litigant's contacts with the forum involve the Internet, courts employ a "sliding scale" to measure the nature and quality of the commercial activity that an entity conducts over the Internet. *Lakin v. Prudential Secs.*, *Inc.,* 348 F.3d 704, 711 (8th Cir. 2003) (*quoting Zippo Mfg. Co. v. Zippo DOT Com*, 952 F. Supp. 1119 (D. Pa. 1997)). At one end of the spectrum are situations where a defendant clearly does business over the Internet (involving knowing and repeated transmission of computer files over the Internet) and at the other end are situations where a defendant has simply posted information on an Internet website which is accessible to users in foreign jurisdictions. *Id.* A passive website that does little more than make information available to those who are interested in it would not be sufficient for the exercise of personal jurisdiction. *Id.* The middle ground is occupied by interactive websites where a user can exchange information with the host computer. *Id.* In those cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website. *Lakin,* 348 F.3d at 710-711.

When a defendant's intentional and tortious actions are expressly aimed at the forum, the defendant must "reasonably anticipate being haled into court there." *Calder v. Jones,* 465 U.S. 783, 790-91 (1984) (finding personal jurisdiction over defendants who never entered the forum was proper because the allegedly tortious act was drawn from sources within the forum state, and "the brunt of the harm . . . was suffered in" the forum). Copyright or trademark infringement is a tort. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1388 (8th Cir. 1991). The tort of copyright infringement occurs where

7

the owner of the copyright suffers damage. *Id.* (noting that although a defendant's lack of control over distribution of a product in the forum state may weigh against jurisdiction in a negligence action, that lack of control will not bar jurisdiction when the plaintiff has alleged an intentional tort). A cause of action for copyright or trademark infringement arises out of the purposeful dissemination of an infringing mark. *See, e.g., Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (involving patent infringement).

The lack of physical presence in a state cannot alone defeat jurisdiction. *Oriental Trading*, 236 F.3d at 943; *see Burger King*, 471 U.S. at 467 (stating ([j]urisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State"). Although letters, phone calls and faxes may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996). Similarly, "although a choice-of-law provision may be considered for jurisdictional purposes as it may 'reinforc[e] [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there,'" it is insufficient in itself to confer jurisdiction. *Id.* (*quoting Burger King*, 471 U.S. at 482).

The Lanham Act has no special venue provision and thus the general venue statute is applicable. *Woodke v. Dahm,* 70n F.3d 983, 985 (8th Cir. 1995). That statute provides that a federal-question case may be filed in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The statute does not posit a single appropriate district for venue; venue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the

claim occurred there.  *Woodke,* 70 F.3d at 985.  "If personal jurisdiction exists at the commencement of the action, then venue is proper under 28 U.S.C. § 1391(b)."  *Dakota Inds, Inc.,* 946 F. 2d at 1392.

Even if venue is proper, a district court may nevertheless transfer any civil action—for the convenience of the parties and witnesses or in the interest of justice—to any other district in which it could have been brought.  28 U.S.C. § 1404(a).  The venue provision was drafted in accordance with the doctrine of *forum non conveniens*, which permits transfer to a more convenient forum.  *Wisland v. Admiral Beverage Corp.,* 119 F.3d 733, 736 n.2 (8th Cir. 1997).  A plaintiff's choice of his home forum is usually accorded great deference and will not be disturbed unless the balance of private and public factors heavily indicate another forum.  *Piper v. Reyno*, 454 U.S. 235, 255-256 (1981).  Generally, transfer under § 1404(a) "should not be freely granted."  *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982).

When deciding a motion to transfer venue under the doctrine of *forum non conveniens*, courts must consider:  (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice.  *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).  A district court is not limited to evaluating only these factors in assessing a transfer motion, however*.  Id.* at 696.  Determinations of venue require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors.  *Id.* at 691.  A district court is directed to take account of factors other than those that bear solely on the parties' private ordering of their affairs; it must also "weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns,

come under the heading of 'the interest of justice.'" *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 30 (1988).

### B. Analysis

The record shows that each of the Armstrong defendants purposefully availed themselves of the privilege of conducting activities in Nebraska. Dorothy Armstrong and A.J. Armstrong purposefully entered into contracts with Proxibid, a Nebraska corporation. The agreements provided that Nebraska law governed the contracts. The allegedly tortious acts arose out of these relationships. The choice-of-law provision and Dorothy Armstrong's and A.J. Armstrong's other contacts with Nebraska, including telephone calls, teleconferences, and A.J. Armstrong's visit to the state show that they "purposefully availed" themselves of the privilege of conducting business in the state. Alan Armstrong, through Armstrong Auctions, purposefully entered into a business relationship with Proxibid. Conducting numerous auctions via Proxibid's website cannot be considered random, fortuitous, or attenuated. Alan Armstrong's activities as a client of Proxibid are closer to the edge of the spectrum of Internet activities that are sufficient to confer jurisdiction than to those that are not. The alleged tortious activities of BigGavel.com inflict an injury in Nebraska. The court finds that defendants purposefully directed their activities at the residents of this forum through these contacts, activities, and relationships.

The claims of trademark infringement, breach of contract, deceptive trade practices and unfair competition arise out of and are closely connected to the Armstrong defendants' purposeful activities. By directing their allegedly tortious acts at residents of Nebraska, the defendants should have reasonably anticipated being haled into court in Nebraska. Because Nebraska has a significant interest in discouraging injuries in its state and in

providing an efficient forum for redress of such injuries, assertion of personal jurisdiction is reasonable and fair. Accordingly, the court finds that the plaintiff has met its burden and has made a prima facie showing of personal jurisdiction. The defendants have not shown that litigation in this forum would be unreasonable. Most evidence presented by the defendants in support of the motion relates more to the merits and sufficiency of the plaintiff's claims than to the minimum contacts determination.

In addition, because Proxibid has made a prima facie showing of personal jurisdiction, venue is proper in Nebraska. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d at 1392. The Armstrong defendants have not presented a compelling case for transfer of venue and the court will honor the plaintiff's choice of forum. Accordingly,

IT IS ORDERED that defendants' motion to dismiss or to transfer venue, Filing No. 16, is denied.

DATED this 21st day of May, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge